**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO: 5:19-CV-00088-MOC**

| | | |
|---|---|---|
| **JEFFREY HERBERT HAYES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income. Plaintiff filed a Motion for Summary Judgment, requesting reversal and remand for rehearing. (Doc. No. 12). The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. (Doc. No. 14). For the following reasons, the Court denies Plaintiff's motion, grants the Commissioner's motion, and affirms the Commissioner's finding of non-disability.

**I. BACKGROUND**

**A. Administrative Exhaustion**

In April 2015, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, alleging he had been disabled since January 27, 2014. (Doc. No. 9-1 at 124). Plaintiff's claims were denied initially and upon reconsideration, so he filed a written request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on October 26, 2017, for de novo consideration of Plaintiff's claims. (Id.). On April 25, 2018, the ALJ issued a decision, concluding Plaintiff was not disabled within the meaning of the Act. (Id. at 135). The Appeals Council denied Plaintiff's request for review on May 6, 2019, rendering the

ALJ's decision final and thus reviewable by this Court. (Id. at 5). Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

**B.      Sequential Evaluation Process**

The Social Security Act states that "an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. § 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries their burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

### C. The Administrative Decision

The issue before the ALJ was whether Plaintiff was disabled from April 9, 2015, Plaintiff's protective filing date, to the date of the decision. Using the sequential evaluation process, the ALJ concluded at step five that Plaintiff was not disabled within the meaning of the Act.

To begin, the ALJ recognized at step one that Plaintiff had not engaged in substantial gainful activity since the filing date. (Doc. No. 9-1 at 126). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: mild degenerative changes of the thoracic and lumbar spine; alcohol abuse disorder; mental impairments varyingly diagnosed as bipolar disorder; panic disorder; generalized anxiety disorder; and agoraphobia. (Id.). She also found the following impairments were non-severe: diabetes mellitus; obesity; gastroesophageal reflux disorder; hypertension; medial and lateral epicondylitis; unspecified gallbladder disorder; brain tumor; opioid abuse disorder; and inguinal hernia. (Id. at 126–27).

At step three, the ALJ decided Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id. at 128–31). Next, the ALJ found Plaintiff had the residual functional capacity to perform medium work, as defined in 20 C.F.R. § 416.967, except he could: sit for six hours in an eight-hour workday, with normal breaks; stand and walk for six hours in an eight-hour workday, with normal breaks; and occasionally climb ladders and scaffolds. (Id. at 131–34). However, she restricted Plaintiff to work that: avoids exposure to unprotected heights and workplace hazards; does not involve operating a motor vehicle commercially; and requires no more than superficial interaction with others. (Id.). Finally, the ALJ explained Plaintiff would be: best-suited for an occupation performing routine, repetitive tasks, without a high production quota or a fast-paced work environment; and most successful working with objects rather than people. (Id.).

After recognizing Plaintiff had no past relevant work, the ALJ concluded at step five that he could perform jobs that exist in significant numbers in the national economy, including: stores laborer; hospital cleaner; and dining room attendant. (Id. at 134–45). Because such work existed, she held that Plaintiff was not disabled under the Act. (Id. at 135).

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis

for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

Here, Plaintiff contends that the ALJ failed to provide a logical explanation connecting the record evidence and her ultimate conclusions regarding Plaintiff's residual functional capacity. Specifically, the ALJ purportedly failed to explain how she analyzed Plaintiff's statements concerning the intensity, persistence, and limiting effects "of his panic attacks and the severity of his anxiety" alongside other record evidence. (Doc. No. 13 at 8). Plaintiff also maintains the residual functional capacity is not supported by substantial evidence. The Court disagrees.

In evaluating symptoms, the ALJ recounted substantial portions of Plaintiff's testimony. Plaintiff testified that he was diagnosed with anxiety disorder in the mid-1980s, at which point he was hospitalized for six months. (Id. at 132). He also testified that he drove only when necessary and that he rarely rides his motorcycle anymore because of his panic attacks. (Id.). Moreover, he indicated he avoids social gatherings and only shops at smaller stores where he can get out quickly with limited interaction. (Id.). Plaintiff noted his panic attacks are prompted by being in crowds or stores, out on the road, and being in unfamiliar places. (Id. at 133). Additionally, he cannot go further than two miles from his home without experiencing a panic attack. (Id.). And when those

5

attacks arise while he is driving, he has to stop and walk around until they abate. (Id.).

After carefully summarizing Plaintiff's testimony, the ALJ then discussed the medical evidence contained within the record. Of note here, two state psychological consultants—Dr. Skoll and Dr. Fulmer—evaluated Plaintiff and found his medical impairments to be severe. Therefore, they recommended that he be limited to work settings with limited interpersonal demands, as well as low-production and low-stress environments. The consultants determined that Plaintiff would be able to "adapt adequately" to such restrictions. (Id.).

Ultimately, the Court found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects" of his symptoms were "not entirely consistent" with the medical evidence and other evidence in the record," but were "generally consistent with the medical evidence of record." (Id.). Therefore, Plaintiff's consistent statements were "accommodated" into the residual functional capacity. (Id.). For example, the ALJ determined that Plaintiff "should not operate a motor vehicle commercially." (Id. at 131). Likewise, from Plaintiff's and the psychologists' testimony, the ALJ determined Plaintiff should have "no more than superficial" interaction with people, and "would be most successful working with objects rather than people." (Id.). Finally, in accordance with the psychologists' testimony, the ALJ decided that Plaintiff can work in environments with "no more than superficial" interactions with others, "without high production quotas," and without "a fast paced-work environment." (Id.).

Plaintiff asserts this thorough analysis has several problems, but each argument is unavailing. First, Plaintiff suggests it is "contradictory" to find his symptom testimony is "generally consistent," but "not entirely consistent with the medical evidence and other evidence in the record." (Doc. No. 13 at 6). Plaintiff is logically incorrect. The word "generally" is defined as "with respect to the majority of individuals or cases" or "for the most part." See Generally,

Oxford English Dictionary (3d ed. 2009) (emphases added). It is not logically inconsistent or irrational to find that Plaintiff's symptom testimony was consistent with medical evidence "for the most part," but not entirely. See, e.g., Bal Seal Eng'g Co. v. Jay Qiang Huang, No. 10-CV-819, 2011 WL 11787991, at *13 (S.D. Cal. July 15, 2011).

Next, Plaintiff asserts the ALJ failed to identify precisely which of his statements were inconsistent with other record evidence. (Doc. No. 13 at 6). Notably, ALJs need not address every piece of evidence in rendering a decision. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). Nor are they required to give "elaborate or even sophisticated" explanations; rather, the explanation must be "clear enough to enable judicial review." T-Mobile South, LLC v. City of Roswell, Ga., 135 S. Ct. 808, 815 (2015); accord Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir.), as amended (Feb. 22, 2019) (recognizing that the ALJ's explanation must be sufficient to allow the Court "to conduct meaningful appellate review"). Even where "an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" Alaska Dep't of Envtl. Conservation v. E.P.A., 540 U.S. 461, 497 (2004) (citation omitted). Here, the ALJ's decision was sufficiently clear to enable the Court to understand her decision and meaningfully review it.

A close read of the ALJ's decision reveals what portions of Plaintiff's testimony were deemed consistent with other medical evidence in the record and thus accommodated within his residual functional capacity. For example, because Plaintiff testified that his "panic attacks are prompted by being . . . on the road," the ALJ restricted him to occupations that do not operate commercial motor vehicles. (Doc. No. 9-1 at 133). And because he testified that crowds cause panic attacks, the ALJ limited Plaintiff to jobs involving "no more than superficial" interactions, noting he "would be most successful working with objects rather than people." (Id. at 131, 133).

The decision is also clear where the ALJ departed from Plaintiff's symptom testimony as inconsistent with medical evidence in the record: Plaintiff's ability to work. The ALJ noted that Plaintiff testified "he usually cannot go more than two miles from his home without experiencing a panic attack." (Id. at 133). She also recognized the contrasting opinion of the psychological consultants, who indicated that Plaintiff's medical impairments were severe, but that he would "be able to follow simple instructions in low production settings, and to be able to adapt adequately to work in low-stress settings." (Id.). In this respect, the ALJ adopted limitations in accordance with the psychologists' medical evidence rather than Plaintiff's testimony.

Finally, Plaintiff highlights several portions of his symptom testimony, asserting "if [those] allegations are accepted as generally consistent with the evidence of record," then the ALJ should have made a "[residual functional capacity] finding that would preclude [him from performing] the jobs identified" at step five of the sequential evaluation process. (Doc. No. 13 at 12). As discussed above, Plaintiff's symptom testimony certainly could support his suggested finding. But other evidence supported the contrary conclusion—including the psychological opinion identified by the ALJ. The Court is required to sustain the ALJ's decision, even if the Court disagrees with it, provided the determination is supported by substantial evidence. See Hancock, 667 F.3d at 472; Smith v. Chater, 99 F.3d 635, 637 (4th Cir. 1996). The record evidence identified by the ALJ provided a substantial basis for her decision in this case.

## III. CONCLUSION

Because the final decision of the ALJ built a logical bridge connecting the record evidence and the conclusion of non-disability, and because that conclusion is supported by substantial evidence, the final decision of the ALJ is affirmed and this action is dismissed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that: the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**; Plaintiff's Motion for Summary Judgment (Doc. No. 12) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**; and this action is **DISMISSED**.

Signed: March 25, 2020

Max O. Cogburn Jr.
United States District Judge